H. Ascher Sellner et al. *v.* Beechwood Construction Company, Inc., et al.

Cotter, C. J., Loiselle, Bogdanski, Longo and Peters, Js.

Argued November 9, 1978—decision released January 9, 1979

*James R. Fogarty,* with whom was *James J. Huron,* for the appellants (defendants).

*Joseph M. Brophy,* for the appellees (plaintiffs).

PETERS, J. This case arises out of two contracts for the construction and sale of a new one-family residence in the town of Brookfield. In 1973, a construction contract was negotiated between the plaintiffs, H. Ascher Sellner and his wife Sandra A. Sellner, and the defendant Beechwood Construction Company, Inc. This contract was signed on behalf of Beechwood by its president, the defendant Simon Aragi. Aragi himself, on his own behalf, subsequently conveyed the land and the building to the Sellners in 1974. When the plaintiffs took possession they encountered problems with the basement, the plumbing, and the septic system. After unsuccessful attempts to have the defendants remedy these alleged defects, the plaintiffs sued both defendants in a four-count complaint alleging: (1) breach of contract; (2) breach of the statutory warranty contained in § 52-563a of the General Statutes; (3) breach of the express warranty in the construction contract; and (4) negligence. After a trial to a jury, the plaintiffs were awarded $15,000 on a general verdict. Judgment was rendered for the plaintiffs in this amount after denial of the defendants' motion to set aside the verdict. Both defendants have appealed.

The defendants' appeal challenges: (1) the legality of a prejudgment remedy afforded to the plaintiffs; (2) the propriety of amendment of the plaintiffs' complaint late in the trial in order to establish a basis for piercing the corporate veil to make Aragi personally liable on the Beechwood construction contract; and (3) the amount of the verdict awarded to the plaintiffs. These various claims must be addressed separately.

## I

The plaintiffs' action was begun through an application for a prejudgment remedy in the form of an attachment on real estate, under 1973 Public Acts, No. 73-431, § 5.[1] Under that statute, enacted in response to the constitutional instructions of *Fuentes* v. *Shevin*, 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972), and *Sniadach* v. *Family Finance Corporation*, 395 U.S. 337, 89 S. Ct. 1820, 23 L. Ed. 2d 349 (1969), prejudgment remedies were no longer to be automatically issued by attorneys as commissioners of the Superior Court. Instead, such remedies were to be granted only by a court and, except under the exceptional circumstances specified by the statute, only after a hearing conducted in accordance with the requirements of due process. See General Statutes §§ 52-278c, 52-278d. In this case, the plaintiffs asked for and received an ex parte attachment under § 52-278e,[2] alleging

---

[1] At the time this action was instituted, Public Act No. 73-431 required, in order to obtain any ex parte prejudgment remedy, a showing of "reasonable likelihood" that one of six extenuating circumstances existed. The act was later designated General Statutes §§ 52-278a to 52-278g, and was amended to provide additionally for an attachment on real estate upon a showing of "probable cause to sustain the validity of the plaintiff's claim." Public Acts 1976, No. 76-401.

[2] "[General Statutes, Rev. to 1975] Sec. 52-278e. ALLOWANCE OF PREJUDGMENT REMEDY WITHOUT HEARING. SUBSEQUENT MOTION, HEARING AND ORDER. The court or a judge of the court may allow the prejudgment remedy to be issued by an attorney without hearing as provided in sections 52-278c and 52-278d, upon verification by oath of the plaintiff or of some competent affiant, that there is reasonable likelihood that the defendant (a) neither resides in nor maintains an office or place of business in this state or (b) has hidden or will hide himself so that process cannot be served on him or (c) is about to remove himself or his property from this state or (d) is about to fraudulently dispose of or has fraudulently disposed of any of his property with intent to hinder, delay or defraud his creditors or (e) has fraudulently hidden or withheld money, property

probable cause that there was a reasonable likelihood that the defendants were about to dispose of their property fraudulently with the intent to hinder, delay or defraud their creditors. The plaintiffs' supporting affidavit averred that threats of personal violence by the individual defendant had led to the belief that the defendant would do everything in his power to obstruct collection of damages, including the transfer of any possible property for attachment for satisfaction of such debt.

In accordance with the procedures specified by § 52-278e, the defendants moved promptly to dissolve the prejudgment remedy, but this motion was denied after a hearing. The defendants subsequently moved to reduce the amount of the attachment, but this motion also was denied after a hearing which the defendants' counsel did not attend. No direct appeal was taken from the denial of either motion. We have held that "prejudgment remedy proceedings pursuant to the provisions of Public Act 73-431 [now §§ 52-278a et seq.] are not involved with the adjudication of the merits of the action brought by the plaintiff or with the progress or result of that adjudication. They are only concerned with whether and to what extent the plaintiff is entitled to have property of the defendant

or effects which should be liable to the satisfaction of his debts or (f) has stated he is insolvent or has stated he is unable to pay his debts as they mature. The defendant appearing in such action may move to dissolve or modify the prejudgment remedy granted pursuant to this section in which event the court shall proceed to hear and determine such motion expeditiously. If the court determines at such hearing requested by the defendant that there is probable cause to sustain the validity of the plaintiff's claim, then the prejudgment remedy granted shall remain in effect. If the court determines there is no such probable cause, the prejudgment remedy shall be dissolved. An order shall be issued by the court setting forth the action it has taken."

held in the custody of the law pending adjudication of the merits of that action. . . . The decision of the court in the separate and distinct proceeding prescribed by Public Act 73-431 concludes the rights of the parties as to the available prejudgment remedy so that further proceedings in the determination of the merits of the action alleged in the plaintiff's complaint cannot affect them. We conclude that the order is a final judgment from which an appeal may be taken." *E. J. Hansen Elevator, Inc.* v. *Stoll,* 167 Conn. 623, 629-30, 356 A.2d 893 (1975).

The defendants admit that they have failed to take a timely appeal, or to file a timely notice of appeal, of the disputed prejudgment remedy order. They urge, however, that the issue of its validity is one of constitutional dimension, that procedural due process is at stake. This court has on occasion decided untimely appeals on their merits when a constitutional issue would otherwise remain unresolved, or in order "to facilitate business and advance justice." *Silverman* v. *St. Joseph's Hospital,* 168 Conn. 160, 171, 363 A.2d 22 (1975); *State* v. *Chesney,* 166 Conn. 630, 639, 353 A.2d 783, cert. denied, 419 U.S. 1004, 95 S. Ct. 324, 42 L. Ed. 2d 280 (1974); see Practice Book, 1978, § 3164. We do not believe, however, that this case presents the compelling circumstances that must be shown to warrant our decision of an issue untimely raised and collateral to the judgment on appeal.

The defendants do not attack § 52-278e as inherently procedurally incompatible with the requirements of constitutional due process. They concede that they were afforded the prompt postseizure hearings that the statute prescribes. They claim

only that the plaintiffs' affidavit was defective because it failed to allege sufficient facts to show the presence of any of the exceptional circumstances mandated by § 52-278e and because it contained no evidentiary statement of the damages allegedly sustained. In essence their quarrel is neither with the statute nor with the procedures that were followed but rather with the allegedly erroneous conclusions reached at the various hearings on these matters below. Whatever the substantive merits of these contentions; see *Ledgebrook Condominium Assn., Inc.* v. *Lusk Corporation,* 172 Conn. 577, 376 A.2d 60 (1977); they do not warrant a bypass of the normal avenue of a direct and timely appeal. The judgment below cannot now be collaterally impeached on this basis.

## II

The defendants do not on this appeal contest the substantive judgment below insofar as it imposed liability upon the corporate defendant Beechwood. They do challenge the sufficiency of the evidence to support the verdict against the individual defendant Aragi. In this connection, they argue that the trial court acted improperly in permitting the plaintiffs, late in the trial, to amend their complaint in order to allege that Beechwood was a "mere instrumentality" for its president, Aragi, and to hold Aragi personally liable on the breach of contract and breach of warranty counts on which he had previously not been personally charged. Aragi had from the outset been a named defendant on the fourth count of negligence. The defendants allege error in the allowance of this amendment on the ground that it was untimely and that no excuse was offered for the delay.

This court has held repeatedly that the decision whether to allow an amendment to the pleadings lies within the sound discretion of the court, and that such a ruling may be reversed only upon a clear showing of abuse of discretion. *Phaneuf* v. *Commissioner of Motor Vehicles,* 166 Conn. 449, 454, 352 A.2d 291 (1974); *Robinson* v. *Faulkner,* 163 Conn. 365, 376, 306 A.2d 857 (1972); *Antonofsky* v. *Goldberg,* 144 Conn. 594, 597, 136 A.2d 338 (1957); see Practice Book, 1963, §§ 132, 134, as amended. On the facts of this case, it is apparent that no such abuse has been shown. The individual defendant was actively involved in the case as a defendant and as a witness from the beginning of the trial. At the time of the amendment the defendants had not yet rested and therefore had the opportunity to elicit further testimony in response to the amended complaint.

## III

Finally, both defendants assert that the verdict should have been set aside as excessive. We have often held that the amount of an award is a matter within the province of the trier of fact, and that the denial of a motion to set aside an allegedly excessive verdict is entitled to great weight. *Gorczyca* v. *New York, N.H. & H. R. Co.,* 141 Conn. 701, 703, 109 A.2d 589 (1954), and cases cited. The test is "whether the total amount of the verdict falls within the necessarily flexible limits of fair and reasonable compensation or is so large as to offend the sense of justice and compel a conclusion that the jury were influenced by partiality, prejudice or mistake." Id.; see *Johnson* v. *Flammia,* 169 Conn. 491, 499, 363 A.2d 1048 (1975); *Armstrong* v. *Garneau,* 163 Conn. 610, 611, 316 A.2d 511 (1972).

Furthermore, even when a verdict can be based on only one count of a complaint, it is presumed that the damages were assessed as to that count only, and a verdict for the plaintiff must be sustained. *Velardi* v. *Selwitz,* 165 Conn. 635, 642, 345 A.2d 527 (1974); *Sheeler* v. *Waterbury,* 138 Conn. 111, 114, 82 A.2d 359 (1951). To protect against such an implication, a defendant should request the court to obtain a separate verdict on each count, or to submit interrogatories to the jury. *Velardi* v. *Selwitz,* supra; *Sheeler* v. *Waterbury,* supra. Tested by the evidence presented, the verdict in this case falls within the limits of fair and reasonable compensation. The trial court did not err in refusing to set aside the verdict as excessive.

There is no error.

In this opinion the other judges concurred.