ANTHONY APUZZO *v.* FRANK SENECO

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued April 5—decision released July 3, 1979

*William F. Gallagher,* with whom, on the brief, was *Joseph M. Delaney,* for the appellant (defendant).

*Charles G. Albom,* with whom was *Carl E. Cella,* for the appellee (plaintiff).

PER CURIAM. While the plaintiff was working in his garage, the defendant's dog ran into the garage and jumped at the plaintiff. The plaintiff held out his hands to fend off the dog and the dog bit him on the left index finger. The plaintiff brought this action against the defendant to recover for the injuries and damages caused by the dog bite. The court rendered a summary judgment on the issue of liability alone and thereafter the parties went to trial on the issue of damages. The jury awarded $45,000 to the plaintiff and the defendant has appealed.

It is undisputed that the defendant's dog bit the plaintiff on his left index finger. He went to the emergency room for treatment. There was swelling and pain for the following three months. He was then admitted to a hospital where the finger was operated on. There followed a reaction involving tremendous swelling of the fingers of the left hand. His arm was placed in a cast for about two weeks. At the time of trial, the plaintiff had a 50 percent limitation of active motion in his left forefinger and

the prognosis was that this condition was unlikely to show significant improvement. In February, 1976, the plaintiff suffered a spasm phenomenon which caused his left index finger to override his middle finger. The plaintiff had no control over this reaction which persisted for a long time and was very painful.

The defendant claims that the court erred in refusing to charge, as requested, that the jury could draw an adverse inference from the plaintiff's failure to call, as a witness, an employee from his last employer to testify concerning job availability. The plaintiff was a hoist engineer who, prior to being bitten, had been employed by Dwight Building Company for about six or seven years. He earned approximately $20,000 a year net. At the time of the incident he was on a short layoff. The defendant offered evidence that all records of the plaintiff's former employer were in Hamden. The request to charge was as to job availability generally and not as to any particular relationship between the plaintiff and his former employer. The plaintiff was a crane operator. His work was not peculiar to Dwight Building Company alone. There was no evidence that any official of Dwight Building Company would have "superior" knowledge of the availability of jobs in the construction business other than those offered by his own firm. In such a situation, "[t]he failure of a party to call as a witness a person who is available to both parties and who does not stand in such a relationship to the party in question or to the issues that that party would naturally be expected to produce him if his testimony was favorable affords no basis for an unfavorable inference." *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 676, 165 A.2d 598 (1960).

During the time the plaintiff was unable to work as a crane operator prior to trial, he received unemployment compensation at the rate of $115 per week for sixty-five weeks and in addition received $35 per week for approximately thirteen weeks from his union. The defendant argues that the court erred in not charging the jury that the former payments must be deducted from any award rendered. The evidence indicated that the plaintiff did not apply for or receive unemployment compensation until after his employer refused, on recalling him to work, to use him as a hoist engineer or in any other capacity because of the injury to his hand. Thereafter he tried unsuccessfully to get other work consistent with his ability, but could not find employment until his former employer gave him a job as an errand boy in its garage at the rate of $125 per week. As a hoist engineer, the plaintiff had been earning $410 a week.

Connecticut follows the rule that payments from a collateral source to an injured plaintiff may not be considered in mitigation of damages. *Healy* v. *White,* 173 Conn. 438, 448, 378 A.2d 540 (1977); *Gorham* v. *Farmington Motor Inn, Inc.,* 159 Conn. 576, 579, 271 A.2d 94 (1970); 22 Am. Jur. 2d, Damages § 206; annot., 19 A.L.R.2d 557, 561 § 3; see also annot., 75 A.L.R.2d 885, as to funds received from public or private pensions. In *Kurta* v. *Probelske,* 324 Mich. 179, 188, 36 N.W.2d 889 (1949), the Michigan court ruled explicitly that unemployment compensation paid to an injured plaintiff came within the collateral source rule. Thus, the trial court in the present case was not in error in refusing to charge that unemployment compensation benefits could be deducted from plaintiff's net earnings.

The defendant next claims that the court erred in submitting the question of lost earning capacity to the jury. The defendant contends that the evidence of the plaintiff's lost time from work was insufficient as a matter of law in the absence of evidence that work in the plaintiff's trade was available. The plaintiff introduced evidence that he was called back to work within a week after being bitten by the dog and that about eighteen months later he was again called back by his employer. He introduced evidence that for the previous three years his earnings were about $20,000 a year and that his employment was steady. Once a steady work background is shown, and no evidence is produced to show any reason why such steady employment could not continue, there is no burden upon the plaintiff to prove that the type of work he was engaged in was continuously available during the period of his disability. Cf. *Carter* v. *Bartek,* 142 Conn. 448, 452, 114 A.2d 923 (1955).

The final claim of error is that the verdict of $45,000 was excessive. No useful purpose would be served in a detailed recitation of the evidence produced. The evidence as to permanency was adequate to justify a charge on that issue. The plaintiff incurred $2298.19 in medical bills. Loss of income was well over $20,000 by the time of the trial. The injury to the finger and the subsequent unusual effects thereafter have previously been related. The trial court's refusal to set aside the verdict is entitled to weighty consideration. *Neal* v. *Shiels, Inc.,* 166 Conn. 3, 19, 347 A.2d 102 (1974). The basic question is "whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that

the jury were influenced by partiality, prejudice, mistake or corruption." *McKirdy* v. *Cascio*, 142 Conn. 80, 86, 111 A.2d 555 (1955); *Sellner* v. *Beechwood Construction Co.*, 176 Conn. 432, 438, 407 A.2d 1026 (1979). It cannot be held as a matter of law that the award does not fall within the necessarily uncertain limits of just damages.

There is no error.