CARLOS ASPIAZU *v.* MARIO ORGERA
(13125)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and GLASS, Js.

624

Argued September 29—decision released December 29, 1987

*Mark F. Katz,* for the appellant (defendant).

*Robert R. Petrucelli,* for the appellee (plaintiff).

ARTHUR H. HEALEY, J. The plaintiff, Carlos Aspiazu, brought this action for damages against the defendant, Mario Orgera, alleging an intentional assault and/or a negligent contact. The jury found for the plaintiff on the intentional assault count and awarded $28,000 in damages. The defendant has appealed to this court, alleging that the trial court improperly admitted a medical report and that the court erred in its instruction to the jury regarding unemployment compensation benefits awarded to the plaintiff. We find no error.

The jury could reasonably have found the following facts: The plaintiff had worked for one year as an assistant engineer and superintendent under the supervision of the defendant. The two parties had been at odds in the year previous to the alleged assault. On March 18, 1980, the plaintiff reported for work and was using a heavy broom to sweep water off the roof of a building under construction in Stamford. The defendant

approached the plaintiff, told him in a loud voice that he was fired, and then struck him in the mouth with his fist. The defendant continued to throw punches, hit the plaintiff with the broom, and then tried to push him off the roof. The plaintiff managed to run away and call the police.

The police took the plaintiff to St. Joseph Hospital where he was treated and released. The hospital record indicates that the plaintiff suffered a lacerated lower lip, a lump on his forehead and two loosened front teeth. The plaintiff later had to have those two teeth removed and had a bridge inserted by Dr. Herbert Kweskin, a dentist. He also saw Dr. Simon Goldfarb, a psychiatrist, during the months immediately following the assault.

The defendant raises two claims on appeal: (1) the trial court erred in admitting the doctor's report of Goldfarb because the report contained inadmissible hearsay and it failed to establish causation; and (2) the trial court erred by instructing the jury that the evidence of the receipt of unemployment compensation by the plaintiff was to be used by the jury only for impeachment purposes.

I

The record reveals that Goldfarb treated the plaintiff from March 24, 1980, to August 25, 1980. On March 14, 1981, Goldfarb prepared a written report that described the history and treatment of the plaintiff. At the time of trial, Goldfarb had retired and was living in New Mexico and neither the plaintiff nor the defendant attempted to procure his attendance at the trial or to take his deposition. Instead, the plaintiff sought to introduce the doctor's report under General Statutes § 52-174 (b),[1] which permits the admission into

[1] General Statutes § 52-174 (b) provides: "In all actions for the recovery of damages for personal injuries or death, pending on October 1, 1977, or

evidence of any "treating" physician's report as a business entry. The defendant objected to the report in its entirety and also made objections to various portions of the report that resulted in numerous redactions by the trial court.

## A

The defendant first objects to the admission into evidence of certain hearsay testimony contained in Goldfarb's report. The defendant asserts that Goldfarb had not met the plaintiff prior to the assault and therefore all of his report "must necessarily have been based upon information provided by the plaintiff or others."

Before specifically addressing the defendant's first argument, it is instructive to examine General Statutes § 52-174 (b). That statute permits a signed doctor's report to be admitted as a business entry. The business records statute, General Statutes § 52-180,[2] allows the

brought thereafter, any party offering in evidence a signed report and bill for treatment of any treating physician, dentist, chiropractor, osteopath, natureopath or podiatrist may have the report and bill admitted into evidence as a business entry and it shall be presumed that the signature on the report is that of the treating physician, dentist, chiropractor, osteopath, natureopath or podiatrist and that the report and bill were made in the ordinary course of business."

[2] General Statutes § 52-180 provides: "ADMISSIBILITY OF BUSINESS ENTRIES AND PHOTOGRAPHIC COPIES. (a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of per-

admission of any writing as evidence of the act or event it describes provided the record was made in the regular course of business and that it was the regular course of business to make such a writing within a reasonable time after the occurrence of the event in question. Section 52-174 (b) creates a presumption that the doctor's signature is genuine and that the report was made in the ordinary course of business. See *Struckman* v. *Burns,* 205 Conn. 542, 534 A.2d 888 (1987). Thus, once the statutory requirement that the report be signed by a treating physician is met, the evidence in that report is admissible and has the same effect as a business entry. This does not mean, however, that the entire report is automatically admitted. *State* v. *Daniels.* 180 Conn. 101, 105, 429 A.2d 813 (1980). In the area of hospital records, this court has held that since the business of a hospital is treating patients, information that is not relevant to the medical treatment of the patient is inadmissible. *Kelly* v. *Sheehan,* 158 Conn. 281, 285, 259 A.2d 605 (1969) (identity of driver who struck patient is not admissible); *Maggi* v. *Mendillo,* 147 Conn.

---

sonal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility.

"(c) Except as provided in chapter 3, if any person in the regular course of business has kept or recorded any memorandum, writing, entry, print, representation or combination thereof, of any act, transaction, occurrence or event, and in the regular course of business has caused any or all of them to be recorded, copied or reproduced by any photographic, photostatic, microfilm, microcard, miniature photographic or other process which accutately reproduces or forms a durable medium for so reproducing the original, the original may be destroyed in the regular course of business unless its preservation is otherwise required by statute. The reproduction, when satisfactorily identified, shall be as admissible in evidence as the original in any judicial or administrative proceeding, whether the original is in existence or not, and an enlargement or facsimile of the reproduction shall be likewise admissible in evidence if the original reproduction is in existence and available for inspection under direction of court. The introduction of a reproduced record, enlargement or facsimile shall not preclude admission of the original.

"(d) The term 'business' shall include business, profession, occupation and calling of every kind."

663, 667, 165 A.2d 603 (1960); *D'Amato* v. *Johnston,* 140 Conn. 54, 61, 97 A.2d 893 (1953). Information that is relevant to the treatment of the patient, however, is admissible. See, e.g., *D'Amato* v. *Johnston,* supra, 61–62 (drunkenness is medically germane to treatment and therefore admissible). "Section 52-174 (b) in no way eliminates a plaintiff's burden of establishing the relevancy of the expert opinions expressed [in the report]." *Struckman* v. *Burns,* supra, 554. We hold that doctors' reports should be treated similarly to hospital records regarding relevancy problems. Once the report is ruled admissible under the statute, any information that is not relevant to medical treatment is subject to redaction by the trial court.

Turning to the defendant's claim of hearsay, we first recognize that once a report qualifies as a business record, its proponent is not required to show the source of information for each item contained in the record. The burden is on the objecting party to specify objections to the inadmissible parts of the report. *Mucci* v. *LeMonte,* 157 Conn. 566, 570, 254 A.2d 879 (1969); C. Tait & J. LaPlante, Connecticut Evidence (1976) § 11.14 (f). The defendant made an initial objection to the admission of the report as a whole. In response, the trial court indicated that it was going to admit the report on the basis of the statute but that it would consider any of the defendant's objections to specific portions of the report. The defendant made numerous suggestions to the court with the result that the court redacted a number of irrelevant sentences.

"It is the general rule that an expert's opinion is inadmissible if it is based on hearsay evidence. See cases such as *Vigliotti* v. *Campano,* 104 Conn. 464, 465, 133 A. 579 [1926]. One exception to this rule, and the only one bearing on this appeal, is the exception which allows a physician to testify to his opinion even though it is based, in whole or in part, on statements made to him

by a patient for the purpose of obtaining from him professional medical treatment or advice incidental thereto. And, of course, he may also testify to such statements." *Brown* v. *Blauvelt,* 152 Conn. 272, 274, 205 A.2d 773 (1964); see *State* v. *Esposito,* 192 Conn. 166, 175, 471 A.2d 949 (1984). In *Brown,* we also said: "Most exceptions to the hearsay rule are permitted because it is believed that safeguards are present which at least approach those given by the opportunity for cross-examination existing where hearsay testimony is not involved. See cases such as *Ferguson* v. *Smazer,* 151 Conn. 226, 231, 196 A.2d 432 [1963]. In the case of the exception we are considering, the safeguard is the patient's desire to recover his health, which it is considered will restrain him from giving inaccurate statements to a physician employed to advise or treat him." *Brown* v. *Blauvelt,* supra, 275. Goldfarb's report satisfies the requirements of § 52-174 (b): it is the signed report of a treating physician in an action for personal injuries. The information in the report is relevant on the issue of the plaintiff's damages and the information falls under the hearsay exception for statements of bodily condition made to a treating physician. *State* v. *Esposito,* supra; *Brown* v. *Blauvelt,* supra, 274; C. Tait & J. LaPlante, supra, § 11.12.

The defendant renewed his objection to the report in its entirety but that objection was overruled by the trial court. On appeal, the defendant does not identify in his brief any specific hearsay statements that he claims were improperly admitted. Moreover, at oral argument he neither identified them nor asserted any reasons why they were inadmissible. We note that the trial court redacted a number of statements dealing with the plaintiff's past history. The remainder of the report concerns general background information about the plaintiff, a description of the course of treatment, and a diagnosis. All of this information was pertinent

to Goldfarb's treatment of the plaintiff. The trial court's actions were correct and the defendant's claim that hearsay statements were improperly admitted into evidence has no merit.

### B

The defendant next asserts that Goldfarb's report failed to establish the necessary causal relationship between the alleged assault and the subsequent treatment and damage sustained by the plaintiff. This argument also has no merit.

"To be entitled to damages a plaintiff must establish a causal relationship between the injury and the physical condition which he claims resulted from it. *Bates* v. *Carroll,* 99 Conn. 677, 679, 122 A. 562 [1932]." *Boland* v. *Vanderbilt,* 140 Conn. 520, 525, 102 A.2d 362 (1953). This causal connection must rest upon more than surmise or conjecture. Id. "A trier is not concerned with possibilities but with reasonable probabilities. *Richardson* v. *Pratt & Whitney Mfg. Co.,* 129 Conn. 669, 672, 30 A.2d 919 [1943]." Id. The compensation must not be "a matter of guesswork or speculation but must be based upon results which would reasonably and probably flow from the injuries the plaintiff received at the time of the accident." Id., 523.

Expert testimony is often used to establish the existence, extent or cause of an injury or disease. See, e.g., *Healy* v. *White,* 173 Conn. 438, 445, 378 A.2d 540 (1977) (epilepsy and brain damage); *State* v. *Hanna,* 150 Conn. 457, 460, 191 A.2d 124 (1963) (wounds inflicted by human); *Boland* v. *Vanderbilt,* supra (cerebral thrombosis); *Sickmund* v. *Connecticut Co.* 122 Conn. 375, 379–80, 189 A. 876 (1937) (fall caused by diabetic upset). Under some circumstances, this court has held that expert testimony is required to establish causation. See *Collette* v. *Collette,* 177 Conn. 465, 471, 418 A.2d 891

(1979) (miscarriage); but see *Gannon* v. *Kresge Co.,* 114 Conn. 36, 38, 157 A. 541 (1931). One area where expert medical testimony is regarded as essential is medical malpractice. *Levett* v. *Etkind,* 158 Conn. 567, 574, 265 A.2d 70 (1969); *Snyder* v. *Pantaleo,* 143 Conn. 290, 294–95, 122 A.2d 21 (1956). "[T]he medical effect upon the human system of the infliction of injuries, is generally not within the sphere of the common knowledge of a lay witness . . . . " *Collette* v. *Collette,* supra. The expert testimony can be presented in a number of ways: "by the direct opinion of a physician, by his deduction by the process of eliminating causes other than the traumatic agency, or by his opinion based on a hypothetical question." *Boland* v. *Vanderbilt,* supra, 525. Although useful, expert testimony is not always mandatory if the medical condition is obvious or common in everyday life. *State* v. *Orsini,* 155 Conn. 367, 372, 232 A.2d 907 (1967). This is especially true if one is testifying about his own physical condition. Id. (complainant testified to the fact that she was pregnant). Expert testimony may also not be necessary to establish causation if the plaintiff's evidence creates a probability so strong that a jury can form a reasonable belief without the aid of any expert opinion. *Gannon* v. *Kresge Co.,* supra; C. Tait & J. LaPlante, supra, § 7.16 (c). One area where expert testimony is not always required is mental suffering. *Leabo* v. *Leninski,* 2 Conn. App. 715, 727, 484 A.2d 239 (1984); *Buckley* v. *Lovallo,* 2 Conn. App. 579, 589, 481 A.2d 1286 (1984).

We now turn to the issue of whether Goldfarb's report should have been excluded because it failed to establish causation. The report relates in detail the feelings of the plaintiff toward the defendant after the incident. The report shows, inter alia, that the plaintiff first sought psychiatric help six days after the alleged assault, that he was obsessed with getting revenge against the defendant, that he both feared and hated

the defendant, that he displayed anger, depression, irritability, insomnia and anxiety, and that the diagnosis was characterized as "[p]ost-traumatic neurosis." Although the defendant's brief does not articulate his claim in any more detail than a conclusory assertion, the apparent thrust of the defendant's argument is that the medical report does not explicitly articulate the "reasonable medical probability" standard that is relied upon so often in direct testimony by medical experts. See *Ulma* v. *Yonkers General Hospital,* 53 App. Div. 2d 626, 384 N.Y.S.2d 201 (1976).

An expert opinion cannot be based on conjecture or surmise but must be "reasonably probable." *Witkowski* v. *Goldberg,* 115 Conn. 693, 696, 163 A. 413 (1932). Any expert opinion that describes a "condition" as possible or merely fifty-fifty is based on pure speculation. *Davis* v. *P. Gambardella & Son Cheese Corporation,* 147 Conn. 365, 373, 161 A.2d 583 (1960). The problem with Goldfarb's report is not that it is expressed in terms of possibilities rather than probabilities but that it makes no statement expressly concluding that the alleged assault was responsible for the plaintiff's treatment for mental distress. Although we approve generally of the "reasonable medical probability" standard, we also note that no "talismanic words" are mandatory. See *Healy* v. *White,* supra, 444 (testifying to odds and percentages is acceptable); *Boland* v. *Vanderbilt,* supra; 31 Am. Jur. 2d § 44 (1967 and 1987 Sup.).

While we do not believe that it is mandatory to use "talismanic words" or "the particular combination of magical words represented by the phrase 'reasonable degree of medical certainty [or probability]' "; *Matott* v. *Ward,* 48 N.Y.2d 455, 463, 399 N.E.2d 532, 423 N.Y.S.2d 645 (1979); there is no question that, to be entitled to damages, a plaintiff must establish the necessary causal relationship between the injury and the physical or mental condition that he claims resulted

from it. *Boland* v. *Vanderbilt,* supra. Before the trial court could permit the jury to consider the Goldfarb report as probative on the issue of causation, the court had to be persuaded that the report gave reliable evidence that the doctor was reasonably confident of the relationship between the plaintiff's injury and his psychiatric diagnosis and treatment. We are satisfied that the Goldfarb report meets this standard. See *Matott* v. *Ward,* supra, 459–60. We think the Goldfarb report, signed by him as a physician and on his letterhead as a physician, could reasonably have been interpreted by the jury, under instructions that we observe have not been challenged, to meet that acceptable standard of reliability typified by the "reasonable degree of medical certainty [or probability]" demanded in such cases.

Goldfarb's report characterized the plaintiff's condition as "[p]ost-traumatic neurosis." A jury could reasonably have found that the trauma referred to is the alleged assault. The report also described the incident when the defendant allegedly struck the plaintiff and how the plaintiff feared, hated and sought revenge against the defendant. The plaintiff, on direct examination, made it clear that the reason that he sought psychiatric help was the alleged assault by the defendant.[3] A fair reading of the report as a whole makes it clear that the alleged assault was the precipitating event that created the condition for which Goldfarb treated the plaintiff for approximately five months thereafter. Goldfarb was the treating medical physician throughout. He had the advantage of a relatively prompt postattack opportunity for his treatment, observations and evaluation of his patient. He prescribed

---

[3] On direct examination, the following took place:

"Q. Well, all right. Okay. Just about you, your anxiety. Is this a result of this incident with Mr. Orgera?

"A. Yes, it was.

"Q. Have you ever had this before, this anxiety?

"A. Never, no."

medication for him. The plaintiff appeared to Goldfarb "to have been an active, well adjusted and secure young man." The report notes that there were some symptoms of nervousness, irritability, sleeplessness and fear "for more than three months" prior to the attack by the defendant and while this could be claimed to have preexisted the attack, the plaintiff himself was cross-examined on this at the trial and denied he ever told that to Goldfarb. The defendant, had he chosen, could have had the plaintiff examined, deposed Goldfarb or produced his own expert; he did none of these. Again, while the report is not a model of clarity and while it lacks the "single verbal straightjacket" formulation; see *Matott* v. *Ward,* supra, 460; that the defendant espouses, it passes muster under the circumstances of this case.

The trial court has broad discretion in determining the relevancy of evidence. *Delott* v. *Roraback,* 179 Conn. 406, 414, 426 A.2d 791 (1980); *State* v. *Schaffer,* 168 Conn. 309, 317, 362 A.2d 893 (1975). Its ruling will only be overturned if there is an abuse of discretion. *State* v. *Hogan,* 180 Conn. 182, 183, 429 A.2d 462 (1980). We hold that the report satisfies any threshold question of relevance and that the requisite causal connection was sufficient to submit that issue to the jury. Once the report is determined to be relevant, the weight of that report is a question for the jury. Expert testimony is considered, weighed and tested like any other evidence. *State* v. *Kelly,* 77 Conn. 266, 275, 58 A. 705 (1904); C. Tait & J. LaPlante, supra, § 7.16 (e). The trier is not bound by the opinions of experts and " 'the fact that a witness testifies as an expert does not compel the acceptance of his testimony as true.' *Nixon* v. *Gniazdowski,* 145 Conn. 46, 48, 138 A.2d 796 [1958]." *Pischitto* v. *Waldron,* 147 Conn. 171, 177, 158 A.2d 168 (1960). The jury was free to credit the medical report of Goldfarb with whatever weight it desired. The trial

court reminded the jury that the doctor was not present for cross-examination. The defendant's argument that the trial court improperly admitted Goldfarb's medical report is unavailing.

## II

The defendant's second claim is that the trial court erred in instructing the jury that the plaintiff's application for and receipt of unemployment compensation was only to be used by the jury for purposes of impeachment, and not for mitigation of damages.

The plaintiff testified that he applied for and received unemployment compensation from March 24, 1980, to November 1, 1980. Under the unemployment compensation law in Connecticut; General Statutes § 31-235;[4]

---

[4] General Statutes § 31-235 provides: "BENEFIT ELIGIBILITY CONDITIONS; QUALIFICATIONS; INVOLUNTARY RETIREES. (a) An unemployed individual shall be eligible to receive benefits with respect to any week only if it has been found that (1) he has made claim for benefits in accordance with the provisions of section 31-240 and has registered for work at the public employment bureau or other agency designated by the administrator within such time limits, with such frequency and in such manner as the administrator may prescribe, provided failure to comply with this condition may be excused by the administrator upon a showing of good cause therefor; (2) except as provided in subsection (b) of this section, he is physically and mentally able to work and is available for work and has been and is making reasonable efforts to obtain work, provided he shall not be considered to be unavailable for work solely because he is attending a school, college or university as a regularly enrolled student during his separation from employment, within the limitations of subdivision (6) of section 31-236, and provided further, he shall not be considered to be lacking in his efforts to obtain work if, as a student, he restricts such efforts to employment which does not conflict with his regular class hours as a student, and provided the administrator shall not use prior 'patterns of unemployment' of the individual to determine whether he is available for work; (3) he has been paid wages by an employer who was subject to the provisions of this chapter during the base period of his current benefit year in an amount at least equal to forty times his benefit rate for total unemployment: Provided an unemployed individual who is sixty-two years of age or older and is involuntarily retired under a compulsory retirement policy or contract provision shall be eligible for benefits with respect to any week, notwithstanding subdivisions (1) and (2) of this section, if it is found by the administrator that he

an applicant must be available and looking for work in order to collect unemployment benefits. The plaintiff also testified that he was mentally unable to work during that period. The defendant asserts that the plaintiff's testimony that he was unable to work was inconsistent with his receipt of unemployment benefits and that this circumstance creates an exception to the "Collateral Source Rule." That rule proscribes the use of payments from a collateral source to an injured plaintiff to mitigate damages. *Apuzzo* v. *Seneco,* 178 Conn. 230, 233, 423 A.2d 866 (1979); see also *Kurta* v. *Probelske,* 324 Mich. 179, 188, 36 N.W.2d 889 (1949). The defendant also claims that the trial court erroneously restricted the defendant's submission of evidence as to the amount of unemployment compensation received by the plaintiff and also that the instruction that the benefits should not be considered by the jury in its determination of damages was erroneous.[5]

---

has made claim for benefits in accordance with the provisions of section 31-240, has registered for work at the public employment bureau, is physically and mentally able to work, is available for work, meets the requirements of subdivision (3) of this section and has not refused suitable work to which he has been referred by the administrator. For purposes of subdivision (2) of this section, "patterns of unemployment" means regularly recurring periods of unemployment of the claimant in the years prior to his filing the claim in question.

"(b) The provisions of subdivision (2) of subsection (a) of this section relating to the eligibility of students for benefits shall not be applicable to any claimant who attended a school, college or university as a regularly enrolled full-time student at any time during the two years prior to his date of separation from employment, unless such claimant was employed on a full-time basis, as determined by the administrator, for the two years prior to such date."

[5] The defendant, throughout his brief, makes a number of conclusory assertions with no citation to any authority. See *Hayes* v. *Smith,* 194 Conn. 52, 66 n.12, 480 A.2d 425 (1984) ("[a]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court"). Neither his brief nor his appendix recites the questions, objections, offers of proof, claimed ground of admissibility, ruling, exceptions, requests to charge, etc., that should be available for review. When raising evidentiary issues on appeal, all briefs

The defendant, at oral argument before us, conceded that unemployment benefits are properly considered a collateral source,[6] yet he maintained that *no* instruction whatsoever should have been given about the receipt of unemployment benefits. There is no merit to the defendant's argument. Although the defendant asserted one claim in his brief and another at oral argument, the record shows that no exception to the jury charge was made at the trial to alert the trial court to either of the claims now made on appeal. The defendant at trial excepted to the charge to the jury because the trial court refused to charge that the jury could use the receipt of unemployment benefits to assess the plaintiff's mental and physical ability to work.[7] In any event, since the defendant did not raise his current objections in the trial court, we decline to entertain those claims. *DeFonce Construction Corporation* v. *State,* 198 Conn. 185, 186 n.1, 501 A.2d 745 (1985). Failure to take a precise exception to the trial court's

should identify clearly what evidence was excluded or admitted, where the trial counsel objected and preserved his rights and why there was error. Practice Book § 4065 (d) (3); *Osborne* v. *Osborne,* 2 Conn. App. 635, 641, 482 A.2d 77 (1984). We note that we have carefully scrutinized the record to determine if the defendant's claims that were properly preserved have any merit.

[6] Our holding in this case that unemployment compensation benefits fall under the collateral source rule should not be read as an approval of the plaintiff's apparently inconsistent claims regarding his availability for work. The plaintiff testified that he was unable to work in the months following the accident. When he applied for unemployment compensation benefits, the plaintiff, under General Statutes § 31-235, had to state that he was available and looking for work throughout the eight months that he received benefits.

[7] The defendant excepted to the charge as follows: "The third exception pertains to the use of the evidence pertaining to a claim made for umemployment compensation, the fact that compensation benefits of that type were received by the plaintiff. The Court indicated that it can be used to impeach the claim of availability or unavailability of the plaintiff. The defendant feels that it can also be used to show that the plaintiff was mentally and physically able to work during that period of time."

charge renders the claim unreviewable on appeal. Practice Book § 315; *Logan* v. *Greenwich Hospital Assn.*, 191 Conn. 282, 300, 465 A.2d 294 (1983).

There is no error.

In this opinion the other justices concurred.