******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# VICTOR DEMARIA *v.* CITY OF BRIDGEPORT
## (AC 41234)

Lavine, Sheldon and Prescott, Js.*

*Syllabus*

The plaintiff sought, pursuant to the municipal defective highway statute (§ 13a-149), damages for personal injuries he sustained when he fell on a sidewalk owned by the defendant city of Bridgeport. After his fall, the plaintiff experienced certain symptoms and sought medical treatment at a veterans affairs hospital, where he consulted his primary care provider, V, and other medical professionals. V wrote a document for the plaintiff's medical file, in which she concluded that the plaintiff's injuries, including injuries to his fingers, a permanent disability of neuropathy, and left hand permanent weakness, were caused with a reasonable degree of medical certainty by his fall on the city's sidewalk. Prior to trial, the city filed a motion in limine to preclude the admission of V's treatment records, treatment reports, findings, conclusions, and medical opinions as evidence at trial. It claimed that V's treatment records and report were inadmissible under the applicable statute (§ 52-174 [b]) because the city would have no opportunity to cross-examine her, either at a deposition or at trial, as she was prevented from testifying by the applicable federal regulation (38 C.F.R. § 14.808). The trial court denied the city's motion in limine. After the jury returned a verdict for the plaintiff, the trial court denied the city's motion to set aside the verdict, and the city appealed to this court. *Held* that the trial court improperly admitted into evidence V's treatment records and report under § 52-174 (b): the plaintiff was incorrect in his assertion that our Supreme Court, in *Rhode* v. *Milla* (287 Conn. 731), previously had recognized a standard for the admissibility of medical records under § 52-174 (b) that requires only that the plaintiff testify as to the relevance of the records and that the records originate from a hospital, as our Supreme Court in *Rhode* determined that it would have been improper to admit medical records under § 52-174 (b) if the opposing party had had no opportunity to cross-examine their author, either at a deposition or at trial, and in the present case, the medical records V authored should not have been admitted into evidence because V, who was prohibited from providing any opinion or expert testimony in any forum by 38 C.F.R. § 14.808, was unavailable for cross-examination at any time, and, therefore, to admit such medical records would enable a plaintiff, solely because he was treated at a veterans affairs hospital, to present favorable expert opinions from his medical provider without subjecting the author of those opinions to the crucible of cross-examination; moreover, the city was harmed by the trial court's error because the medical records concerned the central issues in the case, as the plaintiff's counsel expressly relied on V's report in closing argument to establish damages and a causal link between the plaintiff's fall and his lingering symptoms, the court did not take any measures, such as the giving of corrective instructions, which might have mitigated the effect of the evidentiary impropriety, and the improperly admitted medical records were not merely cumulative of other validly admitted testimony, as there was no other evidence from a treating medical provider rendering an opinion on either causation or the permanency of the plaintiff's injuries.

Argued January 28—officially released June 11, 2019

*Procedural History*

Action to recover damages for personal injuries sustained by the plaintiff as a result of an allegedly defective highway, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the court, *Hon. William B. Rush*, judge trial referee, denied the defendant's motion to preclude certain evidence; thereafter, the matter was tried to the jury; ver-

dict for the plaintiff; subsequently, the court denied the defendant's motion to set aside the verdict, and rendered judgment in accordance with the verdict, from which the defendant appealed to this court. *Reversed*; *new trial*.

*Eroll V. Skyers*, for the appellant (defendant).

*John H. Harrington*, for the appellee (plaintiff).

*Opinion*

SHELDON, J. The defendant, the city of Bridgeport, appeals from the judgment of the trial court, rendered upon the verdict of a jury, awarding damages to the plaintiff, Victor DeMaria, for injuries he sustained in a fall that occurred on the defendant's sidewalk. On appeal, the defendant claims that the trial court improperly admitted into evidence certain medical records that had been written by Miriam Vitale, a physician assistant who was the plaintiff's primary care provider at the veterans affairs hospital (hospital) in West Haven, under General Statutes § 52-174 (b).[1] We agree with the defendant that the court improperly admitted the medical records written by Vitale into evidence under § 52-174 (b), and that the defendant was harmed by the court's error. Accordingly, we reverse the judgment of the trial court and remand the case for a new trial.

The record reveals the following procedural history and facts, as the jury reasonably could have found them. On March 27, 2014, the plaintiff tripped while walking on the sidewalk of Fairfield Avenue in Bridgeport, when he caught his foot on a raised portion of the sidewalk. As a result, the plaintiff fell forward onto his face and hands, causing him to suffer abrasions to his nose and hands, a broken nose and a broken finger on his left hand. Approximately two months after his fall, the plaintiff began to experience a burning sensation in his left arm, weakened grip strength and a limited range of motion in his left hand. He sought medical attention at the hospital, where he consulted neurologists, radiologists, physical therapists, occupational therapists and his primary care provider, Vitale, concerning his symptoms. After the plaintiff had received approximately two and one-half years of treatment, including extensive physical and occupational therapy, Vitale wrote a document for his medical file titled "Final Report of Injury," in which she opined that the plaintiff had reached the maximum potential use of his left hand, he retained only 47 percent of his former grip strength and he continued to experience pain and neuropathy in that hand. She further concluded that "these injuries were caused with a reasonable degree of medical certainty by the March 27, 2014 accident, [specifically], [to the] left fourth and fifth digit, a permanent disability of neuropathy, as well as left hand permanent weakness occurring as a result of fall and impact of [the plaintiff] during the fall."

The plaintiff brought this action against the defendant for economic and noneconomic damages under General Statutes § 13a-149,[2] alleging that his injuries had been caused by the defendant's failure to remedy a defect in its sidewalk, which it knew or should have known would cause injuries to pedestrians. Prior to trial, the defendant filed a motion in limine to preclude the admission of Vitale's treatment records, treatment reports,

findings, conclusions, and medical opinions as evidence at trial. The defendant argued that Vitale's medical records were inadmissible under § 52-174 (b) because the defendant would have no opportunity to cross-examine her, either at a deposition or at trial, because she was prevented from testifying by 38 C.F.R. § 14.808.[3] The plaintiff responded that precluding the medical records would result in an injustice to him merely because his treating physician was made unavailable to testify by federal regulation and that that is the very type of injustice that § 52-174 (b) was intended to remedy. After a hearing, the court denied the defendant's motion in limine.

Following a three day trial, the jury returned a verdict for the plaintiff, awarding him $15,295.47 in economic damages and $77,500 in noneconomic damages, for a total award of $92,795.47. The court denied the defendant's subsequent motion to set aside the verdict, in which it argued, inter alia, that the trial court erred in admitting the medical records written by Vitale because the defendant had had no opportunity to cross-examine her at a deposition or at trial in violation of its common-law right to cross-examination. This appeal followed. Additional facts will be set forth as necessary.

"Whether the trial court improperly admitted evidence under § 52-174 (b) is an evidentiary question, and our review is for abuse of discretion." *Rhode* v. *Milla*, 287 Conn. 731, 742, 949 A.2d 1227 (2008). "To the extent [that] a trial court's admission of evidence is based on an interpretation of [our law of evidence], our standard of review is plenary. . . . We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law, however, for an abuse of discretion. . . . The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. . . . Thus, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling[s] [on these bases] . . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court . . . reasonably [could have] conclude[d] as it did." (Internal quotation marks omitted.) *Weaver* v. *McKnight*, 313 Conn. 393, 426, 97 A.3d 920 (2014).

Section 52-174 (b) provides in relevant part: "In all actions for the recovery of damages for personal injuries or death, pending on October 1, 1977, or brought thereafter . . . any party offering in evidence a signed report and bill for treatment of any treating . . . physician assistant . . . may have the report and bill admitted into evidence as a business entry and it shall be presumed that the signature on the report is that of such treating . . . physician assistant . . . and that the report and bill were made in the ordinary course of business. . . ." Section 52-174 (b) "permits a signed doctor's report to be admitted as a business [record].

. . . [The statute] creates a presumption that the doctor's signature is genuine and that the report was made in the ordinary course of business. . . . Thus, once the statutory requirement that the report be signed by a treating physician [or physician assistant] is met, the evidence in that report is admissible and has the same effect as a business [record]. This does not mean, however, that the entire report is automatically admitted." (Citation omitted; footnote omitted.) *Aspiazu* v. *Orgera*, 205 Conn. 623, 626–27, 535 A.2d 338 (1987).

In *Struckman* v. *Burns*, 205 Conn. 542, 543, 548–49, 534 A.2d 888 (1987), our Supreme Court considered whether § 52-174 (b) would infringe upon a defendant's common-law right to cross-examination[4] if it were construed to permit the admission into evidence of records from a plaintiff's physician who, because he resided out of state, could not be subpoenaed for trial and, thus, would be unavailable for cross-examination at trial by the opposing party. The court concluded that such a reading of § 52-174 (b) did not significantly curtail the right of cross-examination in the case before it because it did not preclude the taking of the out-of-state physician's deposition in which he could have been effectively cross-examined. Id., 552.

In *Rhode* v. *Milla*, supra, 287 Conn. 732–33, 744, our Supreme Court applied its holding in *Struckman* to a case in which the plaintiff sought to introduce medical records from a chiropractor who, having invoked his fifth amendment privilege against self-incrimination, became unavailable to testify either at a deposition or at trial. In those circumstances, the court found that "the defendants did not have an adequate opportunity to cross-examine [the chiropractor] in a meaningful manner about his [records] either at his deposition or at trial because of his invocation of the fifth amendment privilege. . . . Thus, [it concluded] that the trial court improperly admitted the [records] into evidence pursuant to § 52-174 (b)." Id., 744.

The defendant claims that the present case is indistinguishable from *Rhode* and, thus, that the trial court improperly admitted the medical records containing Vitale's entries under § 52-174 (b). The plaintiff argues that the defendant's reliance on *Rhode* is misplaced because that case can be distinguished from the present one. The plaintiff's argument that *Rhode* is not controlling precedent is unavailing.

The plaintiff claims that our Supreme Court recognized that medical records and bills are admissible "where the [plaintiff testifies] that the bills have been incurred as a result of the injuries received"; (internal quotation marks omitted) id., 745; and there is "corroboration as to the attendance of the doctor upon the plaintiff . . . furnished by hospital records admitted into evidence." *Bruneau* v. *Quick*, 187 Conn. 617, 622, 447 A.2d 742 (1982). Thus, the plaintiff contends that *Rhode*

supports the admission of Vitale's records because the plaintiff here, like the plaintiff in *Rhode*, testified that he received the medical treatment detailed in the records, and the records of such treatment were produced by the hospital. However, the plaintiff's interpretation of *Rhode* ignores the context in which the quoted language was used and, thus, misstates the rule governing the admission of records under § 52-174 (b). The language quoted by the plaintiff immediately followed the court's conclusion that it had a "fair assurance that [the] evidentiary impropriety likely did not affect the jury's verdict." (Internal quotation marks omitted.) *Rhode* v. *Milla*, supra, 745. This language acknowledged that our Supreme Court had found error in the trial court's admission of the medical records and served as a transition to its discussion of harm. Therefore, the plaintiff is incorrect in his assertion that our Supreme Court recognized a standard for the admissibility of medical records under § 52-174 (b) that requires only that the plaintiff testify as to the relevance of the records and that the records originate from a hospital. To the contrary, the court in *Rhode* determined that it would have been improper to admit records under § 52-174 (b) if the opposing party had had no opportunity to cross-examine their author, either at a deposition or at trial. Id., 744. Ultimately, the court found that the error in the case before it was harmless because, inter alia, the medical records did not bear upon a central issue in the case. Id., 744–46.

The plaintiff also claims that the *Rhode* court distinguishes, in its harmless error analysis, between medical evidence in personal injury cases and medical evidence in medical malpractice cases. The plaintiff argues that a complete reading of *Rhode* "reveals an equivocal treatment of medical records admission" but provides no further explanation or support for this argument.

Here, again, the plaintiff misinterprets the language used by the *Rhode* court. The language at issue appears in the court's discussion of the first factor of its harmless error analysis, where it stated: "[I]nasmuch as this case is not a medical malpractice action . . . the medical validity of [the chiropractor's] treatment methods is not a central issue herein." (Emphasis omitted.) *Rhode* v. *Milla*, supra, 287 Conn. 745. The court's language did not thereby limit the application of § 52-174 (b) to medical malpractice cases or give "equivocal treatment" to medical records in that context. Instead, it mentioned medical malpractice cases as a group of cases in which the treatment methods detailed in the medical records would likely be a central issue at trial. Moreover, as is apparent from the plain language of § 52-174 (b), the statute applies broadly to "actions for the recovery of damages for personal injuries or death . . . ." We, therefore, conclude that *Rhode* cannot meaningfully be distinguished from the present case and is controlling precedent.

Like the defendant in *Rhode*, the defendant in the present case did not have an opportunity to cross-examine the witness against it, Vitale, either at a deposition or at trial because she was legally unavailable to offer opinion testimony in any forum. Because, more particularly, she was prohibited from providing any opinion or expert testimony by 38 C.F.R. § 14.808 and, thus, was unavailable for cross-examination at any time, the medical records she authored should not have been admitted into evidence. To admit such records would enable a plaintiff, solely because he was treated at a veterans affairs hospital, to present favorable expert opinions from his medical provider without subjecting the author of those opinions to the crucible of cross-examination.

"This conclusion does not, however, end our inquiry, because [e]ven when a trial court's evidentiary ruling is deemed to be improper, we must determine whether that ruling was so harmful as to require a new trial. . . . [A]n evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful. . . . [T]he standard in a civil case for determining whether an improper ruling was harmful is whether the . . . ruling [likely] would [have] affect[ed] the result. . . . Moreover, an evidentiary impropriety in a civil case is harmless only if we have a fair assurance that it did not affect the jury's verdict." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Hayes* v. *Camel*, 283 Conn. 475, 488–89, 927 A.2d 880 (2007).

"A determination of harm requires us to evaluate the effect of the evidentiary impropriety in the context of the totality of the evidence adduced at trial. . . . Thus, our analysis includes a review of: (1) the relationship of the improper evidence to the central issues in the case, particularly as highlighted by the parties' summations; (2) whether the trial court took any measures, such as corrective instructions, that might mitigate the effect of the evidentiary impropriety; and (3) whether the improperly admitted evidence is merely cumulative of other validly admitted testimony. . . . The overriding question is whether the trial court's improper ruling affected the jury's perception of the remaining evidence." (Citations omitted; internal quotation marks omitted.) Id., 489–90.

The following additional facts are relevant to our determination of harm. The plaintiff testified about his fall, his resulting injuries, and the medical treatment he received for those injuries. He explained that, since his fall, the grip strength in his left hand was less than that in his right hand, causing him to have trouble opening a bottle of water and picking up items with his left hand. By his own lay assessment, the grip strength in his left hand was "40 or 38" percent while the grip strength in his right hand was 90 percent. He further stated that, through physical therapy, he had been able

to improve the grip strength in his left hand to 48 percent.

During the plaintiff's testimony, medical records were admitted into evidence as full exhibits, which detailed the plaintiff's treatment in the ambulance, at the emergency room, and in various follow-up appointments at the hospital. Included in the records was the report at issue, titled "Final Report of Injury," that had been written by Vitale. In the report, Vitale stated: "[The plaintiff] did not have these losses prior to his injuries sustained in the fall of March 27, 2014, and therefore it is concluded that [the plaintiff's] injuries were sustained from the fall on said date."

Vitale further opined that, "[a]fter extensive [physical therapy] and [occupational therapy], [the plaintiff's] diminished potential shown in the above grip strength amounts to 47 [percent] strength in his left hand as compared with his right hand. As such, this is his impairment rating in his left hand and he is considered to have achieved a maximum potential at this point." Nowhere else in the medical records that were admitted into evidence did any other treating medical provider comment on the plaintiff's impairment rating or opine as to the cause of his ongoing symptoms. The medical records from the plaintiff's occupational therapist, however, listed the results of multiple grip strength tests of both of his hands.

In his closing argument, the plaintiff's counsel first noted that his client had sustained "permanent injuries," then read to the jury from Vitale's report. The plaintiff's counsel emphasized that the plaintiff was "considered to [have achieved] maximum potential," stating: "He can—he can squeeze all the—all the instruments, and squeezy balls and everything he wants, it's not [going to] get any better, that's it, he's stuck, stuck with this injury." Counsel then read from Vitale's report a second time, emphasizing her conclusions that the fall caused the plaintiff's injuries. He stated: "So there's no question that a competent medical professional not only found his injuries, but connected them to the accident in writing. I think that's—not only meets the burden of proof of, you know, preponderance of the evidence, I think it's—it's—it would [meet] a higher standard of clear and convincing evidence that these injuries were caused by the accident."

In the closing argument of the defendant's counsel, he questioned the reliability of Vitale's opinion by highlighting that the jury knew nothing about her qualifications and questioning the likelihood that a broken pinky could lead to the loss of function of which the plaintiff complained. In his rebuttal, the plaintiff's counsel attempted to rehabilitate Vitale by emphasizing her medical training and the length of time she had treated the plaintiff.

To determine whether the defendant was harmed by the admission of such improper evidence, we first consider the relationship of the evidence to the central issues in the case, particularly as highlighted by the parties' closing arguments. The plaintiff's counsel expressly relied on Vitale's report in his closing argument to establish a causal link between the plaintiff's fall and his lingering symptoms. To that end, the plaintiff's counsel read from Vitale's report twice, highlighting her opinion on causation and specifically noting that that opinion established that the plaintiff had more than met his burden of proof on the issue of causation. In *Rhode*, our Supreme Court concluded that the medical records at issue did not bear on a central issue in the case because there was no question about the medical validity of the treatment methods detailed in those records and additional evidence was presented to support the plaintiff's claims of injury and disability. *Rhode* v. *Milla*, supra, 287 Conn. 745–46. Here, by contrast, the medical records at issue were the only evidence connecting the plaintiff's injuries that resulted from the fall to his lingering symptoms. Such evidence, thus, established causation while broadening the scope of damages to include compensation for prolonged suffering, disability, and resulting medical treatment. Because the plaintiff relied on the records at issue, as highlighted in his counsel's closing argument, to establish causation and damages, we conclude that such records concerned the central issues in the case.

We next consider whether the trial court took any measures, such as the giving of corrective instructions, which might have mitigated the effect of the evidentiary impropriety. No such measures were taken. To the contrary, the court cautioned the jury in its final charge that it was not to draw any adverse inference against the plaintiff from his decision to submit medical records instead of live testimony from his medical provider to prove his case.

Finally, we must consider whether the improperly admitted records were merely cumulative of other validly admitted testimony. We conclude that they were not. In our review of the record, we could find no other evidence from a treating medical provider rendering an opinion on either causation or the permanency of the plaintiff's injuries. Although the plaintiff testified about the loss of grip strength in his hand and the records from the occupational therapist reflect the results of his grip strength tests over time, such evidence, which might have supported a lay inference of permanency, is not supported by expert opinion. Vitale's expert conclusion was, thus, not merely cumulative of such lay testimony on the issues of causation and permanency. For the foregoing reasons, we conclude that the court's evidentiary impropriety was harmful because we do not have a fair assurance that it did not affect the jury's

verdict.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The defendant claims on appeal, in the alternative, that the court erred in admitting Vitale's medical records for three additional reasons: (1) the admission of Vitale's written expert opinion was precluded under the supremacy clause of the United States constitution and 38 C.F.R. § 14.808; (2) Vitale was not qualified as an expert, as required by § 7-2 of the Connecticut Code of Evidence; and (3) there was no testimony regarding the methodology that she employed in arriving at her medical opinion to establish its validity. See *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998). Because we conclude that it was improper to admit Vitale's medical records under § 52-174 (b), we do not reach these claims. We note, however, that the only foundation that is required for the admission of medical records or bills under § 52-174 (b) is that the record or bill be signed by a treating medical professional. See *Aspiazu* v. *Orgera*, 205 Conn. 623, 627, 535 A.2d 338 (1987). "Thus, once the statutory requirement that the report be signed by a treating physician [or physician assistant] is met, the evidence in that report is admissible and has the same effect as a business [record]." Id. Because § 52-174 (b) merely treats the report as a business record, it does not allow for the admission of medical records or parts of a medical record that would otherwise be inadmissible. See *Struckman* v. *Burns*, 205 Conn. 542, 554, 534 A.2d 888 (1987) ("[§] 52-174 [b] in no way eliminates a plaintiff's burden of establishing the relevancy of the expert opinions expressed [in the report]").

[2] General Statutes § 13a-149 provides in relevant part: "Any person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair. . . ."

[3] Title 38 of the Code of Federal Regulations, § 14.808, provides in relevant part: "(a) [Department of Veterans Affairs] personnel shall not provide, with or without compensation, opinion or expert testimony in any legal proceedings concerning official [Department of Veterans Affairs] information, subjects or activities, except on behalf of the United States or a party represented by the United States Department of Justice. . . ."

[4] The court in *Struckman* "relied on *Gordon* v. *Indusco Management Corp.*, 164 Conn. 262, 271, 320 A.2d 811 (1973), for the principle that there is an absolute common-law right to cross-examination in a civil case." (Footnote omitted; internal quotation marks omitted.) *Rhode* v. *Milla*, supra, 287 Conn. 742–43.