[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
In fifteen separate lawsuits, approximately one hundred and nine plaintiffs filed personal injury actions against the defendants, United Illuminating Company (UI), ABB C-E Services, Inc. (ABB), New England Abatement Resources, Inc. (NEAR) and Allwaste Asbestos Abatement, Inc. (Allwaste), for their alleged exposure to asbestos while working at the Harbor Station Power Plant located in Bridgeport, Connecticut. The five plaintiffs in the case of Bowerman, et al v. United Illuminating, et al, NO. X04-CV-94-0115436-S, and the five plaintiffs in the case ofGoodall, et al v. United Illuminating, et al, NO. X04-CV-95-0115437-S, are the "test plaintiffs" for purposes of the defendants' motion for summary judgment.
The critical issue in this matter is whether the plaintiffs, who claim exposure to asbestos, can maintain an action in negligence absent the manifestation of symptoms of any asbestos-related disease.
In 1993, the plaintiffs worked at the Bridgeport Harbor Station as boilermakers, steamfitters, welders, plumbers or pipefitters. During the same period of time, an asbestos abatement project was undertaken at this UI facility. UI contracted with ABB, NEAR and Allwaste for repairs and asbestos removal. The plaintiffs claim that, because of the actions of these defendants, they were exposed to asbestos and suffered CT Page 14989 injuries as a result thereof.
The amended complaint states three causes of action against each defendant: negligence; reckless and wanton misconduct; and intentional misconduct. The plaintiffs allege that, as a result of the defendants' conduct, they incurred the following injuries:
 1. scarring of their lung tissue caused by inhalation of asbestos dust and fibers;
 2. permanent implantation of [carcinogenic] asbestos fibers in plaintiffs' lungs;
 3. an increased risk of developing lung cancer, mesthelioma, and other asbestos related diseases; and
 4. a present fear, apprehension and anxiety about developing asbestos-related diseases including cancer.
It is also claimed that they will incur future medical expenses relating to continuing medical surveillance to monitor whether plaintiffs' exposure causes health problems.
For the purposes of this summary judgment motion only, the plaintiffs and the defendant submitted a Joint Statement of Undisputed Facts dated April 17, 1998. In that document, the parties agreed to number of facts, including the following:
• Asbestos abatement at the Harbor Station project was conducted from October 2, 1993 until November 25, 1993.
• The ten plaintiffs have not manifested physical symptoms of an injury, illness or disease that could be asbestos-related. Six of the ten plaintiffs have not been diagnosed with an injury, illness or disease that could be asbestos-related.
• One plaintiff was diagnosed with bibasiliar fibrosis in 1990. Plaintiff's medical expert reported this plaintiff revealed no evidence of an asbestos-related disease.
• One plaintiff was diagnosed with a restrictive ventilatory defect, with borderline diffusing capacity, in 1994. Plaintiff's medical expert reported this plaintiff revealed no evidence of an asbestos-related disease. CT Page 14990
• Two of the plaintiffs have been diagnosed with an injury, illness or disease that could be asbestos-related. One plaintiff was diagnosed with pleural thickening on the right and obstructive pulmonary impairment. The other plaintiff was diagnosed with 0/1 ILO reading and bilateral circumscribed pleural thickening.
• None of the four plaintiffs referenced in the previous three paragraphs have had a doctor causally connect their conditions to asbestos exposure at Harbor Station.
• No plaintiff has undergone a lung tissue biopsy, received a medical diagnosis of lung tissue scarring as a result of his presence at Harbor Station or has received any treatment for asbestos-related injury, illness or disease.
• With the exception of one plaintiff, plaintiffs' claims for emotional distress arise solely from the fear of a future asbestos-related illness or disease.
The defendants filed a motion for summary judgment, with separate appendix, affidavits and exhibits, on May 1, 1998, seeking judgment on all counts of the plaintiffs' amended complaint, on the following grounds: 1) plaintiffs do not allege an actionable harm; 2) plaintiffs cannot prove to a reasonable degree of medical certainty that the defendants proximately caused their alleged injuries; 3) plaintiffs cannot recover for an increased risk of a future injury because they did not suffer a present injury; and 4) plaintiffs' claims of emotional distress are objectively unreasonable. The plaintiffs filed a memorandum in opposition, with accompanying attachments, affidavits and exhibits, on July 20, 1998. Thereafter, the defendants filed a reply to the plaintiffs' objection to the defendants' motion for summary judgment on August 10, 1998, and the plaintiffs filed a response to the defendants' reply, with accompanying affidavits, on August 21, 1998.
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . Although the party seeking summary judgment has the CT Page 14991 burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Citations omitted; internal quotation marks omitted.) Home Ins. Co. v. Aetna Life Casualty Co.,235 Conn. 185, 202-203, 663 A.2d 1001 (1995). "A `material' fact has been defined adequately and simply as a fact which will make a difference in the result of the case." Catz v. Rubenstein,201 Conn. 39, 48, 513 A.2d 98 (1986).
To successfully maintain an action in negligence, a plaintiff must demonstrate: 1) that the defendant has acted in a tortious manner; 2) that the plaintiff has sustained actualinjury as a result of the defendant's actions; and 3) that the plaintiff knows of the causal connection between the defendant's tortious conduct and the resulting injury to the plaintiff.BellSouth Telecommunications, Inc. v. W.R. Grace Co.,77 F.3d 603 (2nd Cir. 1996); Dennis v. ICL, Inc., 957 F. Sup. 376, 379
(D. Conn. 1997). Regardless of any breach of a standard of care by a defendant, a compensable injury must occur in order for an action in negligence to survive. Barrett v. Danbury Hospital,232 Conn. 242, 252-53, 654 A.2d 748 (1995). The initial question, therefore, is whether the scarring of lung tissue and implantation of asbestos fibers in the lungs due to asbestos exposure, as alleged in the plaintiffs' amended complaint, are compensable injuries as a matter of law. The plaintiffs claim that, although there are currently no physical symptoms of an asbestos-related disease, the inhalation of asbestos fibers caused a biological-physical harm to the lung tissue which has not yet manifested itself. There are no Connecticut cases addressing this precise issue.
An injury occurs when a party suffers some form of actionable harm, although the harm need not have reached its fullest manifestation for a cause of action to accrue. Burns v. HartfordHospital, 192 Conn. 451, 460, 472 A.2d 1257 (1984). "Actionable harm occurs when the plaintiff discovers or should discover, through the exercise of reasonable care, that he or she has been injured and that the defendant's conduct caused such injury." CT Page 14992Champagne v. Raybestos-Manhattan, Inc., 212 Conn. 509, 521,562 A.2d 1100 (1989).
As to what constitutes an "injury" or "harm", section 7 of the Restatement of Torts, Second, provides the following definitions:
• The word "injury" . . . denote[s] the invasion of any legally protected interest of another.
• The word "harm" . . . . denote[s] the existence of loss or detriment in fact of any kind to a person resulting from any cause.
• The words "physical harm". . . denote the physical impairment of the human body . . .
In the "Comment" section of the Restatement, it is noted that "harm" implies "a loss or detriment to a person, and not a mere change or alteration in some physical person, object or thing. Physical changes or alterations may be either beneficial, detrimental or of no consequence to a person. In so far as physical changes have a detrimental effect on a person, that person suffers harm."
Although no Connecticut courts have had the occasion to rule upon the issue of whether or not the scarring of lung tissue and the implantation of fibers in the lungs due to asbestos exposure constitute a detrimental physical harm, there are decisions in other jurisdictions concluding asymptomatic plaintiffs have no actionable claims under such circumstances.
In Eagle-Picher Industries, Inc. v. Liberty Mutual Insurance,682 F.2d 12, 18, (1st Cir. 1982), the court noted that even when asbestos fiber becomes embedded in the lungs and the scarring process has begun, disabling disease or death is by no means inevitable. For this reason, many courts fail to recognize a viable claim until after some physical manifestation of an asbestos-related disease. In Borel v. Fibreboard Paper ProductsCorp., 493 F.2d 1076, 1102 (5th Cir. 1973), for example, after remarking that a worker's present condition is the biological product of many years of exposure to asbestos dust, the court noted that "courts have consistently held that the cause of action does not accrue until the effects of such exposures manifest themselves." CT Page 14993
The District Court in Hawaii was even more specific when it concluded that "the mere presence of asbestos fibers, pleural thickening or pleural plaques in the lung unaccompanied by an objectively verifiable functional impairment" is not an injury sufficient to support a claim for damages. In Re Hawaii FederalAsbestos Cases, 734 F. Sup. 1563, 1567 (D. Hawaii 1990). Similarly, in Simmons v. Pacor, Inc., 674 A.2d 232, 239 (Pa. 1996), the Pennsylvania Supreme Court held that asymptomatic pleural thickening is not a compensable injury which gives rise to a cause of action. The court went on to say that the plaintiffs are not precluded, however, from subsequently commencing an action for an asbestos-related injury when symptoms develop and physiological impairment begins.
Plaintiffs' argument in the present case that, although asymptomatic, the plaintiffs have suffered some type of "pathological harm" due to their inhalation of asbestos, is an argument which has failed in the following cases. In Schweitzerv. Consolidated Rail Corp., 758 F.2d 936, 942 (3rd Cir. 1985), the court held that "subclinical injury resulting from exposure to asbestos is insufficient to constitute the actual loss or damage to a plaintiff's interest required to sustain a cause of action under generally applicable principles of tort law." (Emphasis added.) In Bernier v. Raymark Industries, Inc.,516 A.2d 534, 543 (Me. 1986), the court concluded that subclinical injury is not an actionable injury under tort law "even assuming that any inhalation of asbestos dust immediately causes microscopic injury to lung tissues. . . ." See also Anchor Packing v.Grimshaw, 692 A.2d 5, 17 (Md.App. 1997), wherein the court held that "cellular changes resulting from asbestos exposure, such as pleural plaques and thickening, alone" does not constitute a legally compensable injury.
Another line of cases denying relief for exposure without the manifestation of physical injuries involves claims brought pursuant to the Federal Employers' Liability Act (FELA). Although not controlling precedent in this case, those cases hold that actional injury under FELA does not exist until the accumulated effect of the inhalation of or exposure to deleterious substances manifests itself as a physical injury. Metro-North CommuterRailroad Co. v. Buckley, 117 S.Ct. 2113, ___ U.S. ___ (1997);Urie v. Thompson, 69 S.Ct., 1018, 337 U.S. 163 (1949); Amendolav. Kansas City Southern Railway Co., 699 F. Sup. 1401 (W.D. Mo. 1988). "The words `physical impact' do not encompass every form CT Page 14994 of `physical contact'. And, in particular, they do not include a contact that amounts to no more than an exposure. . . ."Metro-North Commuter Railroad Co. v. Buckley, supra, 2118.
There are other cases, however, in which the courts have concluded that whether such injuries as those alleged by the plaintiffs in the present case are actionable injuries is a question of fact rather than a matter of law. In Bryson v.Pillsbury Co., 573 N.W.2d 718 (Minn.App. 1998), the court held that the trier of fact should determine whether asymptomatic chromosome damage constituted a legally compensable present injury. The New Jersey Supreme Court, in Caterinicchio v.Pittsburgh Corning Corp., 605 A.2d 1092 (N.J. 1992), concluded that the question was factual and remained within the province of the trier of fact because the plaintiffs' medical experts and the defendants' medical experts disagreed on the critical issue whether the plaintiffs' pleural thickening and pleural plaques constituted a physical injury.
In another case, claiming damages based upon exposure to contaminated air and drinking water, the District Court in Minnesota stated: "[T]his Court cannot rule as a matter of law that plaintiffs' alleged injuries are not `real' simply because they are subcellular. The effect of volatile organic compounds on the human body is a subtle, complex matter. It is for the trier of fact, aided by expert testimony, to determine whether plaintiffs have sufficient present harm." Werlein v. UnitedStates, 746 F. Sup. 887, 901 (D. Minn. 1990). A Third Circuit decision, decided under Pennsylvania law, similarly concluded that with respect to asbestos-related pleural thickening, substantial medical disagreement over the classification of such a "condition" prevented the court from declaring it to be an injury as a matter of law. "This question is factual and remains within the province of the trier of fact." Howellv. Celotex Corp., 904 F.2d 3, 5 (3rd Cir. 1990)
This court is persuaded that the better line of reasoning warrants the conclusion that whether or not the scarring of lung tissue and implantation of asbestos fibers in the lungs constitute a compensable legal harm is an issue of fact if there is evidence showing such conditions to be detrimental and if there is evidence showing the existence of such conditions in the plaintiffs. Although the plaintiffs contend that their expert, Dr. Cullen, opined that a biological-physical harm occurs to the lung tissue almost immediately after the inhalation of asbestos CT Page 14995 fibers, an examination of his affidavits does not reveal any such statement. The nearest approximation appears to be the statement in paragraph 6 of his letter to Attorney Shafner dated July 9, 1998, wherein he says:
 There is ample evidence that asbestos is ingested by certain cells within the respiratory tract and other organs which, in turn, leads those cells to incite an inflammatory response in their vicinity. Within the lung tissue, it is most likely that the inflammatory response itself initiates and promotes carcinogenesis in the epithelial cells, eventually leading to . . . lung cancer. . . . In any event, I think that the best evidence at the present time suggests that within the lung, the most important aspect of carcinogenesis relates to inflammation and in the pleura, probably direct interaction and tumor initiation via genetic change.
Dr. Cullen, at paragraph 12 of his letter, addresses pleural changes.
 Individuals who have asbestos-related pleural changes have, as a group, clearly experienced substantial asbestos exposure which is the basis for such pleural changes. In general, as a group, they are also reasonably older since it takes approximately 20 years from first exposure for the appearance of asbestos-related pleural changes. Having said that, in most epidemiologic studies which have looked at the question, individuals with pleural changes compared to co-workers without such pleural changes, appear to have a higher risk of developing asbestos-related malignancy. The basis for this is uncertain and may relate to the fact that as a group they have had more exposure to asbestos or may relate to the fact that as a group they have more evident biological responsiveness to asbestos than that group which has been exposed but has shown no pleural response. In any event, it is not that the pleural plaques are, themselves, are [sic] pre-malignant or auger malignancy, but only that they serve as a good marker for previous exposure and/or biologic responsiveness and, therefore, help us select a group which probably has a somewhat higher risk of developing lung cancer and/or mesthelioma than others CT Page 14996 who appear comparable in other ways.
The Court holds that Dr. Cullen's statements, taken as a whole, do not characterize the conditions alleged in plaintiffs' amended complaint as detrimental physical harms or state that those conditions constitute "bodily changes" as commented upon in the Restatement of Torts, Second.
Even if the Court were to conclude that Dr. Cullen's remarks are sufficient to establish that such conditions are detrimental and constitute an actionable harm, nothing has been submitted to demonstrate that these particular plaintiffs suffer from either of the alleged conditions. Simply stated, the plaintiffs have failed to put this matter in issue.
At oral argument on this motion for summary judgment, plaintiffs' counsel contended that it is a reasonable inference that some of the plaintiffs have asbestos fibers in their lungs. In addition, it is claimed that the opinions of Dr. Cullen expressed in his letters dated July 9, 1998 and August 18, 1998, support the plaintiffs' claims that they are reasonably certain to have suffered a harm due to their inhalation of asbestos and that these opinions are based upon reasonable medical probability rather than mere speculation or conjecture. The court disagrees.
The letters of Dr. Cullen speak generally to risks of exposure to asbestos. Nowhere can the statement be found that these plaintiffs suffered scarring of the lung tissue and permanent implantation of asbestos fibers in their lungs as a result of their inhalation of asbestos at the Harbor Station. What he does say, at paragraph 11 of his letter dated July 9, 1998, is that he believes "it would be fair to say that even at the low levels postulated under the limited exposure assumption, there could be some biologic response to asbestos exposure in the men at the harbor station. I do not believe that his [sic] could be ascertained by any known clinical testing, including lung biopsy, in view of the fact that the changes are likely to be relatively slight compared to the normal variation seen in industrial workers who have been exposed to a wide variety of air pollutants and toxins over a working career."
Not only does this statement fail to rise above the level of "speculation and conjecture", but the plaintiffs' medical expert has even concluded that there is no way to demonstrate CT Page 14997 that these plaintiffs suffer from the conditions alleged in the amended complaint. His letter dated August 18, 1998, does nothing to further the plaintiffs' claims. He does give an opinion with respect to medical monitoring for these plaintiffs: "I have recommended medical monitoring of asbestos-exposed individuals at intervals appropriate to their level of exposure as I have for all asbestos-exposed individuals." His recommendation, therefore, is that medical monitoring is needed for anyone exposed to asbestos. He does not say that these particular plaintiffs require monitoring because of the biologic harms already incurred as a result of their exposure at the UI facility.
In addition to Dr. Cullen's affidavits, the individual plaintiffs have submitted affidavits in support of their objection to the defendants' motion for summary judgment. One of the affidavits (Affidavit of Samuel Ray) contains the statement: "I have trouble breathing from time to time, and I believe it is related to the asbestos exposure I have had throughout my 29 year career as a boilermaker." This subjective statement, without any medical documentation to support it, is insufficient to demonstrate that this symptom actually resulted from this plaintiff's claimed exposure to asbestos at the Harbor Station. It does not rise to the level of establishing a genuine issue of material fact as to whether the plaintiff's alleged asbestos exposure is the cause of his current shortness of breath. "The medical effect upon the human system of the infliction of injuries, is generally not within the sphere of the common knowledge of a lay witness. . . ." Aspiazu v. Orgera,205 Conn. 623, 631, 535 A.2d 338 (1987).
No causal connection has been shown between the inhalation of asbestos and the "harm" alleged to have been suffered by these plaintiffs. At the outset, one must show the fact of "damage".Simon v. New Haven Board Carton Co., Inc., 516 F.2d 303, 306
(2nd Cir. 1975). Further, the plaintiffs must demonstrate that the defendants' actions were the proximate cause of the plaintiffs' injuries. Fleming v. Garnett, 231 Conn. 77, 85,646 A.2d 1308 (1994). Proximate cause establishes a reasonable connection between the acts or omissions of the defendants and the harm suffered by the plaintiffs. Stewart v. Federated Dept.Stores, Inc., 234 Conn. 597, 662 A.2d 753 (1995).
"To be entitled to damages a plaintiff must establish a causal relation between the injury and the physical condition CT Page 14998 which he claims resulted from it. . . . This causal connection must rest upon more than surmise or conjecture. . . . A trier is not concerned with possibilities but with reasonable probabilities. . . . [The causal relationship between an injury and its later physical effects may be established] by the direct opinion of a physician, by his deduction by the process of eliminating causes other than the traumatic agency, or by his opinion based upon a hypothetical question." (Citations omitted.)Aspiazu v. Orgera, 205 Conn. 623, 630-31, 535 A.2d 338 (1987);Struckman v. Burns, 205 Conn. 542, 554, 534 A.2d 888 (1987);Budney v. Zalot, 168 Conn. 388, 388-89, 362 A.2d 861 (1975). "Any expert opinion that describes a `condition' as possible or merely fifty-fifty is based on pure speculation." Aspiazu v. Orgera,supra, 632.
The plaintiffs have failed to meet the requisite standard of reasonable medical probability. Not only have they failed in demonstrating that these plaintiffs have lung scarring and implantation of asbestos fibers in their lungs, they have also failed to establish any connection between the defendants' alleged conduct and the harm they claim resulted from it. The plaintiffs "failed to prove the injur[ies], and therefore could not prove causation." LaBieniec v. Baker, 11 Conn. App. 199, 208,526 A.2d 1341 (1987).
The plaintiffs' amended complaint also alleges that as a result of the defendants' conduct, the plaintiffs suffer an increased risk of developing lung cancer, mesthelioma, and other asbestos-related diseases.
"[I]n a tort action, a plaintiff who has established a breach of duty that was a substantial factor in causing a present injury which has resulted in an increased risk of future harm is entitled to compensation to the extent that the future harm is likely to occur." Petriello v. Kalman, 215 Conn. 377, 397-98,576 A.2d 474 (1990). A plaintiff is not burdened with proving the occurrence of the claimed future event is more likely than not, when it is a present risk rather than a future event for which damages are sought. Id., 396. "[A] plaintiff may recover for the fear of future medical treatment and disability, as distinguished from a recovery for the future disability itself, even if there is only a possibility that such future treatment or disability will take place." Goodmaster v. Houser, 225 Conn. 637, 645,625 A.2d 1366 (1993). CT Page 14999
The plaintiffs fail in their claims for increased risk of future harm for the simple reason that they have failed to establish that they personally have suffered present injuries. Without a present injury, under the Petriello rationale, there can be no claim for an increased risk of future harm. Even if it is assumed that the scarring of lung tissue and implantation of asbestos fibers in the lungs are compensable present injuries, there is nothing to indicate these plaintiffs have suffered these injuries as a result of actions of the defendant.
The plaintiffs' cause is not furthered by the claim that many of the individual plaintiffs had previous exposure to asbestos and therefore face a higher risk for the development of asbestos-related diseases. Such an argument cannot prevail without the existence of a present injury. Furthermore, such a claim may actually preclude the establishment of proximate cause if a plaintiff's exposure in the present case was minimal in comparison to his total exposure to asbestos over his work life.
In the plaintiffs' amended complaint, it is alleged that their injuries include "a present fear, apprehension and anxiety about developing asbestos-related diseases including cancer" as a result of the negligent and intentional actions of the defendants. The parties' briefs make reference to the negligent and intentional infliction of emotional distress.
It is important to note at the outset that the claims of emotional distress have not been pleaded as separate causes of action. To support an action for negligent infliction of emotional distress, a plaintiff has "the burden of pleading and establishing that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." Morris v. Hartford Courant Co.,200 Conn. 676, 683, 513 A.2d 66 (1986). There are no such allegations made in the plaintiffs' amended complaint.
To sufficiently plead a cause of action for intentional infliction of emotional distress, it must be alleged: 1) that the defendant intended to inflict emotional distress, or that he knew or should have known that emotional distress was a likely result of the defendant's conduct; 2) that the conduct was extreme and outrageous; 3) that the defendant's conduct was the cause of the plaintiff's distress; and 4) that the emotional distress sustained by the plaintiff was severe. DeLaurentis v. New Haven, CT Page 15000220 Conn. 225, 266-67, 597 A.2d 807 (1991); Petyan v. Ellis,200 Conn. 243, 253, 510 A.2d 1337 (1986). There are no such allegations in the plaintiffs' amended complaint.
For this reason, the emotional distress alleged to have been suffered by the plaintiffs must be treated as a claim for damages resulting from the alleged negligent and intentional conduct of the defendants. The emotional distress would be the fear of contracting an asbestos-related disease in the future as a result of past exposure to asbestos.
Because the plaintiffs failed to show that they have suffered any present injuries, a claim for emotional distress in this case could only survive if mere exposure to asbestos entitles a claimant to emotional distress damages. There are no Connecticut cases directly on point. The case of Barrett v. Danbury Hospital,232 Conn. 242, 654 A.2d 748 (1995), however, does involve a claim for compensation based upon the plaintiff's fear of contracting a blood-borne disease as the result of the alleged negligent actions of the defendant. The plaintiff had been placed on a stretcher in the defendant's emergency room and came in contact with the blood from a prior patient because of a torn vinyl pad which covered the stretcher. The defendants moved for summary judgment and the court granted the motion.
Our Supreme Court affirmed the trial court's decision, noting that the "trial court did not grant the motion for summary judgment on the basis of a finding that there was no negligence on the part of the defendants. The trial court determined that, regardless of any breach of the standard of care by the defendants, a compensable injury did not result. . . . [E]ven if the applicable standard had been violated, the plaintiffs' alleged injuries were not compensable as a matter of law." Id., 252-53.
The plaintiffs' claim that the fear arises from an increased risk of future asbestos-related diseases cannot succeed for the reasons previously discussed, i.e., the plaintiffs have made no showing of present injuries and therefore cannot prevail on a claim for an increased risk of related injuries. Goodmaster v.Houser, 225 Conn. 637, 625 A.2d 1366 (1993); Petriello v.Kalman, 215 Conn. 377, 576 A.2d 474 (1990).[1] For these reasons, the plaintiffs' claims of emotional distress are not viable. CT Page 15001
Counsel for the plaintiffs conceded at oral argument that the claim for medical monitoring expenses does not stand alone. Recovery for such expenses would only be allowable if these plaintiffs have sustained actionable injuries. The court, having ruled that the plaintiffs have furnished no evidence showing the existence of such injuries, concludes that the claim for future medical expenses relating to continuing medical surveillance must fail.[2]
The plaintiffs cite the case of Doe v. Stamford,241 Conn. 692, 699 A.2d 52 (1997), in support of their claim for medical monitoring expenses. In Doe v. Stamford, the plaintiff police officer sought compensation for past and future unpaid medical testing and treatment under the Workers' Compensation Act (act) for injuries related to HIV exposure and tuberculosis. Our Supreme Court concluded that the plaintiff's exposure to an infectious disease constitutes a compensable "injury" under the act. The Court noted that the exposures were sustained in incidents that arose out of and occurred in the course of his employment. Further, the Court stressed the humanitarian andremedial purposes of the Workers' Compensation Act. For this reason, the court finds the Doe v. Stamford case inapposite to the case at bar.
These plaintiffs are not without a remedy. If and when symptoms of an asbestos-related disease manifest themselves, they can bring a cause of action for their injuries.
Prior to the enactment of General Statutes sections 52-577a
and 52-577c, the statute of limitations applicable to a cause of action based upon a claim of negligent exposure to a substance such as asbestos was section 52-584. That provision reads, in relevant part, as follows:
 Limitation of action for injury to person or property
No action to recover damages for injury to the person . . . caused by negligence, or by reckless or wanton misconduct, . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of. . . . (Emphasis added.)
CT Page 15002 A number of courts have construed the word "injury" in cases in which defendants have moved to dismiss plaintiffs' claims for failure to bring them within the time permitted by the statute. In those cases, the courts held that a cause of action does not accrue until the plaintiff suffers an "actionable harm". The "actionable harm" that would be the "injury" under Connecticut law occurs when the plaintiff discovers or should discover, in the exercise of reasonable care, that he or she has been injured and that the defendant's conduct caused that injury. Durrett v.Leading Edge Products, Inc., 965 F. Sup. 280 (D. Conn. 1997). A breach of duty by a defendant, and a causal connection between that defendant's breach of duty and the resulting harm to the plaintiff, are the essential elements of a negligence cause of action. They are, therefore, necessary ingredients for actionable harm which will result in the accrual of the action for limitation purposes. Catz v. Rubenstein, 201 Conn. 39,513 A.2d 98 (1986).
Sections 52-577a and 52-577c were subsequently enacted by the legislature and are now the operative statutes for asbestos claims based upon product liability and personal injury caused by exposure. A plaintiff instituting a product liability claim against a product seller must bring suit within "three years from the date when the injury, death or property damage is first sustained or discovered or in the exercise of reasonable care should have been discovered. . . ." (Emphasis added.) Subsection (e) of section 52-577a further provides, with respect to asbestos, that "no such action for personal injury . . . may be brought by the claimant later than thirty years from the date of last contact with or exposure to asbestos." Again, "injury" has been construed to be first sustained, for purposes of Connecticut's statute of limitations, when the party suffers some form of actionable harm. Durrett, supra, 283. In Champagne v.Raybestos-Manhattan, Inc., 212 Conn. 509, 526-27, 562 A.2d 1100
(1989), the actionable harm occurred when the asbestos-related disease became symptomatic.
In the present case, the applicable statute of limitations is section 52-577c. That provision reads, in relevant part, as follows:
 Limitation of action for damages for damages caused by exposure to a hazardous chemical substance or mixture or hazardous pollutant
CT Page 15003
 (b) Notwithstanding the provisions of sections 52-577
and 52-577a, no action to recover damages for personal injury or property damage caused by exposure to a hazardous chemical substance or mixture or hazardous pollutant released into the environment shall be brought but within two years from the date when the injury or damage complained of is discovered or in the exercise of reasonable care should have been discovered. (Emphasis added.)
A cause of action accrues when the "injury" is discovered or should have been discovered, not from the date of the exposure. In construing the term "injury" in section 52-577c, it is reasonable to conclude it would be given the same judicial interpretation applied to the term "injury" in General Statutes sections 52-584 and 52-577a.[3]
Upon manifestation of symptoms causally related to exposure to asbestos, the two year limitation period under section 52-577c
would begin to run, i.e., a cause of action for actionable injuries accrues at that point in time. If these plaintiffs do manifest symptoms of an asbestos-related disease, they are not without a remedy under the law.
As previously noted, plaintiffs' amended complaint alleges negligence; reckless and wanton misconduct; and intentional misconduct. The negligence claims against the defendants cannot survive this motion for summary judgment because the plaintiffs have failed to show that they have suffered actionable injuries or a causal connection between the alleged actions of the defendants and harm suffered by the plaintiffs. The causes of action based in reckless and wanton misconduct and intentional misconduct must fail for the same reasons. A legal or proximate causal connection between the conduct of a defendant and the resulting injury to the plaintiff is a necessary element of causes of action in recklessness. Boehm v. Kish, 201 Conn. 385,390, 517 A.2d 624 (1986).
Because there has been no showing that these plaintiffs have suffered compensable harm, there can be no cause of action regardless of whether such conduct could be classified as negligent, reckless or intentional. A breach of a standard of care is immaterial if there are no compensable injuries. Barrettv. Danbury Hospital, 232 Conn. 242, 252-53, 654 A.2d 748 (1995). Additionally, "[n]o matter how negligent a party may be, if his CT Page 15004 act bears no causal relation to the injury, it is not actionable." Esposito v. Schiff, 38 Conn. App. 726, 730,662 A.2d 1337 (1995); LaBieniec v. Baker, 11 Conn. App. 199, 206,526 A.2d 1341 (1987).
"A plaintiff cannot transform a negligence count into a count for wilful and wanton misconduct merely by appending a string of adjectives to allegations that clearly sound in negligence." Brown v. Branford, 12 Conn. App. 106, 110,529 A.2d 743 (1987). "[Recklessness] is more than negligence, more than gross negligence. (Citation omitted.) . . . Wilful misconduct has been defined as intentional conduct designed to injure for which there is no just cause or excuse. (Citation omitted.) Its characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances. (Citations omitted.) Not only the action producing the injury but the resulting injury also must be intentional." Dubay v. Irish,207 Conn. 518, 532-33, 542 A.2d 711 (1988). Whether conduct amounts to wilful, wanton and reckless misconduct becomes strictly a matter of law when the mind of a fair and reasonable man could reach but one conclusion. Id., footnote 10, 534.
A review of the plaintiffs' amended complaint reveals essentially the same allegations of misconduct for all three causes of action. The court finds that the conduct alleged does not rise to the level of reckless and wanton misconduct or intentional misconduct.
The court finds that the plaintiffs have failed to state a cause of action in negligence, reckless and wanton misconduct or intentional misconduct. The plaintiffs have not established the existence of a material fact that is in issue. Accordingly, the defendants' motion for summary judgment is granted.
Koletsky, J.